UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMANDA POPE and RICH POPE,<br><br>                      Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>                      Defendant. | CASE NO. 3:17-cv-05868-RJB<br><br>SECOND ORDER ON PLAINTIFFS' MOTION TO COMPEL TREATING PROVIDER EMAILS |

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel Treating Provider Emails. Dkt. 27. The Court has considered the motion and the remainder of the file herein. This Second Order follows an *in camera* review of the discovery Plaintiffs seek to compel. The documents reviewed *in camera* have been placed under seal. Dkt. 54.

BACKGROUND

This case arises out of the allegation that surgeons at Madigan Army Medical Center, a hospital operated by Defendant, caused a serious and permanent injury to the phrenic nerves of Plaintiff Amanda Pope during removal of a tumor on April 26, 2016. Invoking privilege, Defendant has withheld production of three emails exchanged between two persons involved

SECOND ORDER ON PLAINTIFFS' MOTION TO COMPEL TREATING PROVIDER EMAILS - 1

with the surgery, Dr. David Caudrado and Dr. Quinton Hatch, on June 9th and 10th, 2016. Dkt. 29 at 17; Dkt. 39-3 at 2. Defendant invokes the privilege of "QA Review; 10 U.S.C. § 1102." *Id*. As further elaborated below, § 1102 shields production of "medical quality assurance records."

**A. The record, other than documents reviewed *in camera*.**

To show that § 1102 applies, Defendant has attached declarations of Drs. Cuadrado and Hatch. Drs. Cuadrado and Hatch were the attending surgeon and chief resident, respectively, for Ms. Pope's April 26, 2016 surgery. In their declarations, they both declare, identically, the following:

> Pursuant to Madigan [Hospital's] Department of Surgery practices, Plaintiff Amanda Pope's case was peer reviewed because of the complications she experienced. This peer review activity is commonly referred to as Morbidity and Mortality, or an M&M. Ms. Pope's case was initially presented on June 9, 2016. The subject email . . . was drafted after that initial presentation and <u>solely addresses issues raised during the M&M</u>.

Dkt. 40 at ¶¶3, 4 (emphasis added); Dkt. 41 at ¶¶3, 4. The declaration of counsel represents that Plaintiffs deposed Drs. Hatch and Cuadrado on September 20, 2018.

Plaintiffs' Reply has attached partial transcripts of the depositions of Drs. Hatch and Caudrado. When describing medical quality assurance review, Dr. Hatch described "multiple layers . . . start[ing] at the departmental morbidity and mortality[,]" and moving up the administrative chain to include risk management. Dkt. 52 at 7. Dr. Hatch has no personal knowledge of any other medical quality assurance review process particular to Ms. Pope other than the M&M review. *Id*. Dr. Hatch, then a chief resident, personally presented the M&M review of Ms. Pope to other surgeons on June 9 and June 16, 2016. Dkt. 52 at 7, 23. He relied on an M&M template for his report. *Id*. at 8, 9, 20.

When cross examined by Plaintiffs' counsel, Dr. Hatch agreed that the M&M review of Ms. Pope was the "only" document produced for the specific purpose of the M&M review. *Id*. at

SECOND ORDER ON PLAINTIFFS' MOTION TO COMPEL TREATING PROVIDER EMAILS - 2

9. On redirect by Defendant's counsel, Dr. Hatch described "emails related to the M&M review," including "subsequent communications," between himself and Dr. Cuadrado. *Id*. at 17.

Dr. Cuadrado recounts asking Dr. Hatch to present the M&M review a second time. Dkt. 52 at 23. According to Dr. Cuadrado, he and Dr. Hatch exchanged email communications after the initial M&M presentation by Dr. Hatch on September 9, 2016, the content of which "directly relate[d] to the M&M process[,]" under circumstances where Dr. Cuadrado "wanted a revision of his [Dr. Hatch's] initial presentation." *Id*. at 23, 24.

**B. Documents reviewed *in camera*.**

At the risk of divulging confidential information, on the one hand, or failing to articulate a meaningfully specific rationale, on the other hand, the documents reviewed *in camera* should be described here in generalities. The Court has marked each document received, which has been filed for purposes of completing the record. Dkt. 54. The Court has reviewed the following documents *in camera*:

#1 Cover letter from Defendant's counsel, AUSA Whitney Passmore.

#2 Email sent June 9, 2016 at 4:58pm by Dr. Hatch to Dr. Cuadrado, regarding the M&M presentation. The email includes an attachment, "POPE M&M.doc."

#3 M&M Report regarding Ms. Pope. This appears to be the document attached to the June 9, 2016 email. The document describes a June 9, 2016 surgery, with Dr. Cuadrado as the attending surgeon and Dr. Hatch as the resident. The document is stamped with the following: "Quality Assurance document under Title 10 USC 1101."

#4 Email sent June 10, 2016 at 2:12am by Dr. Hatch to Dr. Cuadrado. The email is in regard to something that occurred "today" and events of the surgery and the M&M presentation.

#5 Email sent June 10, 2016 at 10:46am by Dr. Cuadrado to Dr. Hatch, regarding Dr. Hatch's email and further M&M proceedings.

## STANDARD

Under 10 U.S.C. § 1102, subject to certain exceptions inapplicable to this case, "medical quality assurance records created by or for the Department of Defense as part of a medical quality assurance program are confidential and privileged." § 1102(a). The term "medical quality assurance record" is defined as "the proceedings, records, minutes, and reports that emanate from quality assurance program activities . . . and are produced or compiled by the Department of Defense as part of a medical quality assurance program." § 1102(j)(1). A "quality assurance program activity" is "any peer review activity carried out . . . for the Department of Defense to assess the quality of medical care[.]" § 1102(j)(1). By statute, "nothing shall be construed as limiting access to the information in a record created and maintained outside a medical quality assurance program, including a patient's medical records, on the grounds that the information was presented . . . [as] part of the medical quality assurance program." § 1102(h). The medical quality assurance privilege helps facilitate a robust, collegial review process; without the privilege, patients could receive "less than the high quality care they deserve[.]" *E.E.O.C. v. Med-National, Inc.*, 186 F.R.D. 609, 613 (D.Haw. 1999) (internal citations and quotations omitted).

## DISCUSSION

In summary, all documents reviewed *in camera* may be withheld by Defendant under the medical quality assurance records privilege of § 1102.

Regarding the M&M Report (Document #3), the document clearly falls within the privilege. Plaintiffs concede as much. *See* Dkt. 51 at 5:8. Document #3 may be withheld by Defendant.

Regarding the emails (Documents ##2, 4, 5), <u>first</u>, the M&M presentations held on June 9th and 16th, 2016, by Madigan doctors, including Drs. Hatch and Cuadrado, were "quality assurance program activit[ies]." *See* § 1102(j)(1). Dr. Hatch presented the M&M Report for Ms. Pope for the benefit of other surgeons in his department, and the presentations were therefore "peer review activit[ies] carried out . . . to assess the quality of medical care." Plaintiffs argue that the M&M reviews lacked formality, such as supervisory oversight, but § 1102 does not require any particular formal process.

<u>Second</u>, the emails are "records . . . that emanate from" the M&M presentation, because their content is an exchange between Drs. Hatch and Cuadrado about the M&M presentation. The emails were written in response to, and reflect the learning process of, the M&M review. The emails reflect an ongoing collegial review process.

Therefore, the emails are medical quality assurance records, as defined by § 1102, and may be withheld by Defendant.

Plaintiffs argue that emails should be produced because they were made between the two persons involved in Ms. Pope's surgery, and a military regulation, AR 40-68, precludes application of § 1102 under such circumstances. Under AR 40-68, "initial peer review of a PCE [potentially compensable event] is most often conducted at the department/service level. It is performed by an individual (a peer, as defined by this regulation) who has not been involved with the case in question." U.S. Department of Army, Regulation 40-68, Section 13-5 at 110. Plaintiffs first refer to this military regulation in their Reply, and on that basis argument

concerning AR 40-68 is not timely and should be disregarded. The applicability of the regulation has not been briefed by both sides. Nevertheless, even a cursory examination of the regulation reveals that it does not, definitively, modify § 1102.

\* \* \*

THEREFORE, it is HEREBY ORDERED:

Plaintiffs' Motion to Compel Treating Provider Emails (Dkt. 27) is DENIED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of October, 2018.

ROBERT J. BRYAN
United States District Judge